## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**KING'S PALACE, INC. and KPC, INC. d/b/a
KING'S PALACE CAFÉ, INC., TAP ROOM
and ABSINTHE ROOM**, individually and behalf
of all others similarly situated,

     Plaintiffs,

v.

**CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON; and VANGUARD CLAIMS
ADMINISTRATION, INC.,**

     Defendants.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

Plaintiffs King's Palace, Inc., and KPC, Inc. d/b/a King's Palace Café, Inc., Tap Room and Absinthe Room (collectively, "KPC" or "Plaintiffs"), both individually and on behalf of all others similarly situated, file this class action Complaint against Defendants Certain Underwriters at Lloyd's London ("Lloyd's") and Vanguard Claims Administration, Inc. ("Vanguard") (collectively, "Defendants"), and in support of the Complaint alleges the following on information and belief that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, except where specifically identified as being based on personal knowledge, which factual contentions have evidentiary support:

### INTRODUCTION

1.   On personal knowledge, Plaintiffs operate several restaurants and bars located at 162-168 Beale Street, Memphis, Tennessee. Plaintiffs are corporations that are active and in good standing and are based in Memphis, Tennessee.

2.    To protect the restaurant and the income from operation of the restaurant, KPC purchased, *inter alia*, an all risk general liability policy issued by Lloyd's with policy number TN134664. This insurance policy was effective May 17, 2019 through May 17, 2020.  The terms of the policy are referred to herein as the "Policy." [1]

3.    The Policy was issued by Defendant Certain Underwriters at Lloyd's London who severally subscribe to the Policy. Under the Policy, Lloyd's is responsible for, *inter alia*, claims handling, including receiving and managing claims and loss notices, responding to questions about insurance and coverage, investigating claims, and paying claims for covered losses.

4.    The Policy is a bilateral contract. Plaintiffs agreed to pay monthly premiums to Lloyd's in exchange for promises of coverage for certain losses.

5.    Among other types of coverage, the Policy protects Plaintiffs against a loss of business income due to a suspension of the restaurant's operations "caused by direct physical loss of or damage to" the business. This type of coverage is often referred to as business interruption coverage.

6.    The Policy also provides "Business Income (And Extra Expense)" coverage, under which Defendants promised to pay necessary expenses incurred that would not have been incurred due to loss of or damage to the business.

7.    Additionally, the Policy provides "Civil Authority" coverage, under which Defendants promised to pay for loss of business income sustained when the action of a civil authority prohibits public access to the business premises.

8.    Plaintiffs duly complied with their obligations under the Policy, and paid the requisite premiums to Defendants.

---

[1] A redacted true and correct copy of the policy is attached to this complaint as Exhibit "A," and is incorporated herein by reference.

9.      Beginning in March 2020, Plaintiffs were forced to suspend business operations at the restaurant due to risk of infection of COVID-19 and/or actions of civil authorities prohibiting full access to and occupancy of the restaurant due to dangerous physical conditions. This suspension, which is ongoing in terms of its impact on business operations, has caused Plaintiffs to suffer significant losses and incur significant expenses.

10.      On or about March 19, 2020 Plaintiffs submitted a claim for coverage under the Policy. Plaintiffs have fully complied with all terms of the Policy. Defendants, without conducting any meaningful investigation, denied coverage. Yet, despite routinely denying such claims Plaintiffs have participated in an interview and responded to two reservation of rights letters – both of which Defendants took weeks or months to respond before denying coverage.

11.      Under the Policy, Defendants promised to cover these losses and expenses, and is obligated to pay for them. But in breach of their contractual obligations, Defendants denied the claim of Plaintiffs and failed to pay for these losses and expenses, and have taken the position they will not pay any such similar claims no matter the circumstances to putative class members.

12.      According to published reports, Defendants are failing and refusing to pay for similar losses and expenses of other insureds holding policies that are, in all material respects, identical.

**THE PARTIES**

13.      On personal knowledge, Plaintiffs King's Palace, Inc. and KPC, Inc. are Tennessee corporations that are active and in good standing, and are organized to do business in the state of Tennessee. The Plaintiffs' premises are located at 162-168 Beale Street in Memphis, Tennessee.

14.      Defendant Certain Underwriters at Lloyd's London is composed of separate syndicates, which are in turn comprised of entities known as "Names," which underwrite insurance

known as Lloyd's of London.  Each "Name" and syndicate is organized under the laws of the United Kingdom and is located in and has its principal place of business in England.  At all relevant times, Lloyd's subscribed to the Policy.  Service of process or suit when served upon any of the underwriters pursuant to the terms of the Policy is deemed service upon all such underwriters un the Policy. Defendant Lloyd's is transacting in the business of insurance in the State of Tennessee and within the County of Shelby and the basis of this suit arises out of such conduct.  Defendant Vanguard Claims Administration, Inc. works closely with Certain Underwriters at Lloyd's London and is jointly and severally responsible for the decision to deny coverage under the Policy and the policies of all others similarly situated.

15.    At all times material, Defendants, either individually or in concert, engaged in substantial and not isolated activity on a continuous and systematic basis in the state of Tennessee, namely by issuing, selling and/or underwriting insurance policies in Tennessee and by contracting to insure or underwrite insurance on property located in Tennessee.

16.    Under the applicable law and the terms of the Policy, service of process on Defendants may be effectuated by serving Certain Underwriters at Lloyd's London at Messers Mendes & Mount, 750 7th Avenue, New York, New York 10019.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over the parties to this action. Plaintiffs are residents of Tennessee, Defendants transact business in this State, and the members of the Class are resident citizens of this State and any other state where similar policies were issued and/or underwritten or administered by Defendants.

18.    This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity between Defendants and at least one

member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

19.    This Court has personal jurisdiction over each of the Defendants because Plaintiffs' claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Tennessee; Defendants breaching a contract in this State by failing to perform acts required to be performed in this State; and Defendants contracting to insure or underwrite the insurance of property in this State, including but not limited to the premises insured under the Policy. Defendants also purposefully availed themselves of the opportunity to and privilege of conducting activities in the state of Tennessee by marketing and/or underwriting insurance policies and services within this State, and intentionally developing relationships with brokers, agents, and customers within this State to insure property within the State, which resulted in the issuance of the Policy to Plaintiffs, in this action and similar policies to thousands of other businesses.

20.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendants maintain substantial operations in this District; many Class Members either reside or did business with Defendants in this District; Defendants engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and Defendants entered into transactions and received substantial profits from insureds who reside in this District. Pursuant to Local Rule 3.3(a), venue is proper in the Western Division of this District, as Plaintiffs reside in the Western District of Tennessee, and the Western Division of this District is where Plaintiffs' claim arose.

## FACTUAL BACKGROUND

### *The Policy*

21.     In May 2019, Plaintiffs renewed the Policy, a property insurance policy issued by Defendant Lloyd's.  The Policy has a policy period of May 17, 2019 to May 17, 2020.    The insured property under the Policy is located at 162-168 Beale Street, Memphis, TN  38103.

22.     The Policy is an all risk insurance policy.  An "all risk policy" covers all risks of loss that may happen (except by fraudulent acts of the insured), no matter their source and however fortuitous the event or circumstance may be, as long as it is beyond the control of the insured and unless the policy contains a specific provision expressly excluding the loss from coverage.[2] Plaintiffs are not required to prove the precise cause of the loss or damage to demonstrate coverage exists under the Policy or that the loss or damage was occasioned by an external cause, but simply that the loss was due to a fortuitous circumstance or event.  It is not Plaintiffs' burden to prove the non-applicability of any alleged exclusion.

23.     Consistent with the all-risk nature of the Policy, Defendants specifically agreed to pay for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The term "Covered Cause of Loss" is defined in the Policy as "direct physical loss unless the loss is excluded or limited in this policy." The Policy covers all property Plaintiffs own, rent or occupy, as well as business personal property under various provisions of the Policy.

24.     Many of the key terms in the Policy referenced herein, either in isolation or in the context in which they are used (e.g., "Covered Cause of Loss", "dangerous physical conditions,"

---

[2] "All Risk" policies differ from "enumerated risk" policies that only covered certain listed risks such as fire, lightning, wind, theft, collapse, etc.  Insurers developed all risk policies to provide more comprehensive coverage than had previously been offered.  STEVEN PLITT ET AL, 10A COUCH ON INSURANCE 148:50 (3RD ED.).

"direct physical loss", "repaired", "untenantable", "actual loss", "damage", "damage to property", "direct physical loss of or damage to" and "loss") are ambiguous and/or not defined in the Policy. For example, the term "Covered Cause of Loss" is defined as a "direct physical loss". But other parts of the Policy refer to the term "damage" or "damage to", which based on its usage in other contexts would not be modified by the term "direct physical". If construed in the manner Defendants have claimed, Defendants would only have agreed to pay for direct physical loss caused by a direct physical loss, which would be circular and non-sensical. Ambiguous language in insurance contracts are to be liberally construed in favor of providing coverage for the insured and strictly construed against denying coverage. Thus, the Policy must be construed in a manner that provides for coverage for purposes of this Complaint, considering the Policy in its entire context and the nature of the risks the Policy insures against.

25.     Being that Plaintiffs' Policy is an "all risk" policy, considering the entirety of its context the Policy is to be construed as covering "all risks" unless they are specifically excluded. For the reasons detailed below, the losses at issue are fortuitous and not attributable to any action of Plaintiffs. Thus, coverage presumptively exists since any loss or damage claimed by Plaintiffs was occasioned as a result of an unexpected, unintended, fortuitous situation that was beyond the control of the insured and caused a sudden and relatively short-lived event.

26.     One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Business Income (And Extra Expense) Coverage Form".

27.     Specifically, pursuant to this section of the Policy, Defendants promised to "pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'", so long as the suspension is "caused by direct

physical loss of or damage to property at premises" that are "caused by or result from a Covered Cause of Loss." Since as noted above it would be circular and non-sensical to construe the Policy in a manner that it only covers direct physical losses caused or resulting from direct physical losses, this language must construed as covering all forms of damage or loss so long as they are caused by or result from a Covered Cause of Loss.

28.    Each of the operative terms of this coverage provision is defined as follows:

29.    "Business Income" as used in the Policy is defined in relevant part means the interruption of business operations:

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

30.    "Suspension" is defined in the Policy as:

**a.** The slowdown or cessation of your business activities; or

**b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

31.    "Operations" is defined as:

8

**a.** Your business activities occurring at the described premises; and

**b.** The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

32.    "Period of Restoration" is defined as follows:

"Period of restoration" means the period of time that:

**a.** Begins:

    **(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

    **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

    **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    **(2)** The date when business is resumed at a new permanent location.

33.    In addition to promising to pay for loss of Business Income under the Policy, Defendants also promised to pay for certain necessary "Extra Expense" that was incurred "at the premises described in the Declarations." Extra Expense is defined as:

> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

34.    The Policy also provides "Civil Authority" coverage. Under this aspect of the coverage under the Policy, Defendants promised to "pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises" under the following conditions:

> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
> Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

> Civil Authority Coverage for Extra Expense
> will begin immediately after the time of the
> first action of civil authority that prohibits
> access to the described premises and will
> end:
>
> **(1)** Four consecutive weeks after the date
> of that action; or
>
> **(2)** When your Civil Authority Coverage for
> Business Income ends;
>
> whichever is later.

35.    This Civil Authority provision is an independent basis for business interruption

coverage. That is, it can be triggered even when the standard business interruption coverage is not.

36.    Defendants also promised to pay for losses attributable to "Extended Business

Income" defined as the following:

> **c. Extended Business Income**
>
> **(1) Business Income Other Than "Rental Value"**
>
> If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:
>
> **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and
>
> **(b)** Ends on the earlier of:
>
> **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or
>
> **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

11

37.     Some portions of the Policy are standardized forms drafted by the Insurance Services Office (ISO). The ISO is a company that drafts standard policy language for use in insurance contracts.

38.     For the reasons detailed below, the losses at issue are fortuitous and not attributable to any actions of Plaintiffs.

39.     While not relevant to Plaintiffs establishing whether there is coverage under the Policy or an element of their claims, neither Plaintiffs' Policy, nor those of putative class members, contain any exclusion that would allow Defendants to deny coverage for losses caused by the suspension of their business and/or the actions of civil authorities.

40.     Accordingly, because the Policy is an all-risk policy and the losses sustained are the result of fortuitous acts beyond the control of Plaintiffs and others, these losses are covered under the Policy and the policies of other similarly situated persons.

**Plaintiffs' Covered Losses**

41.     On March 13, 2020, the Governor of Tennessee, Bill Lee, declared a public health emergency in response to the appearance of COVID-19 in the State of Tennessee.

42.     As of March 22, 2020, according to the Shelby County Department of Public Health, there were 66 confirmed cases of COVID-19 in Shelby County, with 505 positive COVID-19 tests statewide.  As of August 12, 2020, Shelby County alone, where KPC is located, had 24,176 cases of COVID-19, with at least 313 deaths.  There have now been over 133,708 positive COVID-19 tests in Tennessee.

43.     These pervasive dangerous physical conditions prompted actions by civil authorities throughout the United States requiring the suspension of business at a wide range of

establishments, including but not limited to civil authorities with jurisdiction over the Plaintiffs'
restaurant: the City of Memphis, County of Shelby, and the state of Tennessee.

44.    Consistent with the actions of all states nationwide, on March 22, 2020, Governor
Lee issued Executive Order No. 17, An Order to Mitigate The Spread of COVID-19 By Limiting
Social Gatherings, Dine-In Service, and Gym Use, and Exposure at Nursing and Retirement
Homes, and Providing Flexibility for Restaurants Regarding the Sale of Alcohol.  This Order,
which expressly covers Shelby County, requires all restaurants to close except for curbside or take-
out orders.[3]

45.    On March 23, 2020, the City of Memphis issued Ordinance No. 03-2020
establishing a "Safer at Home Directive and Closure of Non-Essential Services and Businesses."
Among other things, this Order required businesses within the city of Memphis to comply with the
Order of the Governor, requiring closure of all restaurants unless the restaurants prepare food for
delivery or carry out.  Ordinance No. 03-2020 was expressly issued in response to COVID-19
"continu[ing] to present a severe danger to public health."[4] Page 2, Section (3) of the Ordinance
specifically states:  "Mass Gatherings Prohibited.  All public and private gatherings of more than
ten people occurring outside a single household or living unit are prohibited…"  This Order was
extended multiple times by Mayor Strickland, and expired on June 1, 2020.

46.    On March 30, 2020, Governor Bill Lee issued Executive Order No. 21, An Order
Amending Executive Order No. 17 to Further Mitigate the Spread of COVID-19 by Limiting Non-
Essential Services and Gatherings, which extended Executive Order No. 17 through April 14,
2020.  Governor Lee also issued Executive Order No. 22, An Order Directing Tennesseans to Stay

---

[3] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee17.pdf
[4] https://covid19.memphistn.gov/wp-content/uploads/2020/03/Executive-Order-No-03-2020.pdf

Home Unless Engaging in Essential Activities to Limit Their Exposure to and Spread of COVID-19. This order requires non-essential businesses to close access to their premises to the public.[5]

47.    On April 13, 2020, Governor Lee extended Tennessee's Stay At Home Order (Order Nos. 17 and 22) through April 30, 2020. While Order No. 29 was issued on April 24, 2020, which reopened restaurants in the state, it gave county health departments authority to maintain orders in several counties including Shelby, where KPC operates their business.[6]

48.    On June 1, 2020, the Shelby County Health Department released a Health Directive No. 5, which allowed restaurants to reopen, but those restaurants must be adhere to social distancing policies, and dining groups should be limited to no more than six people.[7][8]

49.    Plaintiffs were forced to suspend or reduce business at their restaurant as a result of the Civil Authority Actions issued by local and state civil authorities set forth above mandating the suspension of business for on-site in-dining services, as well as in order to take necessary steps to prevent further damage and minimize the suspension of business and continue operations.

50.    These Civil Authority Actions prohibited full customer access to and use of Plaintiffs' and the other Class members' property, and the area immediately surrounding damaged property, in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss.

51.    The incubation period for COVID-19 is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020 – weeks earlier than previously reported – suggesting that the virus has been circulated in the United States far longer

---

[5] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee21.pdf;
https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee22.pdf
[6] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee29.pdf
[7] http://shelbytnhealth.com/DocumentCenter/View/1748/Health-Directive-No-5?bidId=
[8] The Orders and Ordinances referenced in paragraphs 41-48 are collectively referred to as the "Civil Authority Actions."

than previously assumed.  It is likely customers, employees and/or other visitors to the insured property over the last several months were infected with COVID-19 and thereby infected the insured property with COVID-19. Plaintiffs' premises likely have been infected with COVID-19 and suffered direct physical loss to the premises and property.

52.    The presence of employees and customers likely infected with or carrying COVID-19 renders property within a mile of their premises unsafe and unusable, resulting in direct physical loss to the premises and property.

53.    The presence of employees and customers likely infected with or carrying COVID-19 at the premises renders the premises, including property located at the premises, unsafe, resulting in direct physical loss to the premises and property.

54.    Loss of use of property that has not been physically altered constitutes "direct physical loss of or damage to property at premises" for purposes of insurance coverage under the Policy. As the drafter of the Policy, if Defendants had wished to exclude from coverage "physical loss of or damage to property at premises" the loss of use of property that has not been physically altered or deformed, they could have used explicit language stating such a definition, but did not do so.

55.    Plaintiffs have sustained an actual loss of Business Income due to the necessary suspension of their operations during the period of restoration based on the activities set forth above. For a period of time of at least four consecutive weeks, since at least March 16, 2020, Plaintiffs' business was partially or totally suspended as a result of a Covered Cause of Loss. Plaintiffs were prohibited from allowing customers access to their premises as a result of these Civil Authority Actions between at least March 24, 2020 and May 31, 2020, and after that date were only permitted to be open for dine in operations at 50% capacity.  They are still unable to

resume normal business operations.  In addition, access to premises other than Plaintiffs' premises that are within a mile Plaintiffs' premises were also prohibited as a result of the Civil Authority Actions, resulting in loss or damage to those properties as well.  And when Plaintiffs were permitted to reopen, they could only do so if they made internal structural changes to the premises, which they did at a significant cost by, *inter alia*, the loss of use of space, installing plexi-glass barriers, making changes in business and employee hours to comply with the ordered sanitation requirements, and decreased business traffic, as set forth in further detail below.

56.    Plaintiffs have sustained a direct physical loss of or damage to the covered premises and property, which were caused by a fortuitous event covered under the Policy that occurred during the Policy period.  Since at least March 24, 2020, Plaintiffs' business was partially or totally suspended as a result of a peril insured against under the Policy. Plaintiffs were prohibited from allowing customers to access its premises for on-premises dining as a result of these Civil Authority Actions until at least May 31, 2020, and even now Plaintiffs are unable to fully resume normal business operations and is experiencing a significant slowdown of their business operations.  And when Plaintiffs were permitted to reopen, they could only do so if they had made structural changes to the premises, which they did at significant cost by, *inter alia*, removing tables to allow for appropriate social distancing and having to pay storage costs for those tables, as well as the loss of use of those tables, installing plexi-glass barriers, making changes in reduced business hours and employee hours to comply with the ordered sanitation requirements decreasing decreased customer traffic.

57.    In addition, access to premises other than Plaintiffs' restaurant that are within a mile of the restaurant were also prohibited as a result of the Civil Authority Actions.  The Civil Authority Actions were taken in response to the dangerous physical conditions set forth above,

and resulted from the damage or continuation of the Covered Cause of Loss that caused the damage described above. These fortuitous acts and circumstances resulted in a Covered Cause of Loss that caused damage at such premises.

58.    In order to reopen many businesses, including Plaintiffs, were required to structurally alter the interior of their premises, at added costs, such as by removing tables to allow for appropriate social distancing and associated storage costs. The fewer tables there are, the fewer customers that can be served. In addition, Plaintiffs incurred expenses and losses such as the costs of reopening plans and increased costs associated therewith; remediation costs, either incurred as a result of having to engage in increased cleaning costs or shutting down entirely to avoid further spread and temporarily incapacitating the facility from operating; being considered untenantable for a period of time in terms of being at least temporarily unfit for occupancy and use, resulting in a loss of its essential functionality or use of the premises; tangible property loss in terms of spoiled food that had to be discarded as a result of various Civil Authority Actions; and other increased costs or losses, either resulting from or that are attributable to a Covered Cause of Loss.

59.    Thus, there has been a direct physical loss of and/or damage to the covered premises or property located therein under the Policy by among other things, denying access to the property, the loss of tangible physical property within the premises in terms of food or other supplies purchased by Plaintiffs prior to the Civil Authority Actions that spoiled or had to be discarded; the loss of use of tangible physical property within the premises even if that property was not itself physically injured; the premises being deemed to be physically uninhabitable and untenantable by customers and rendering the facility unfit for occupancy by virtue of the Civil Authority Actions and/or preventing customers from physically occupying the property; damage to the property; being forced to incur costs to make physical structural alterations to the premises; increased

sanitizing costs and ongoing and increased payroll obligations; having the function of the premises to be nearly eliminated or destroyed and/or causing a decline in use and causing an suspension of business operations on the premises that could result in the diminution of value of the premises. These are all forms of damage or losses caused and incurred as a result of a Covered Cause of Loss to covered property.  These forms of loss and damage are and/or have been found to constitute direct, tangible, physical losses or damage, or compensable increased costs attributable to such losses or damage.

60.    In addition, access to the premises for in customer dining, the primary purpose of the restaurant, was specifically prohibited by the Civil Authority Actions. Plaintiffs' business also sustained an actual loss of business income as a result of the Civil Authority Actions that resulted in a necessary "suspension" of operations of Plaintiffs' business.  These actions shut down not only Plaintiffs' business operations but those businesses located at properties within a mile of Plaintiffs' business.

61.    Additionally, Plaintiffs' restaurant has suffered an suspension of normal business operations in terms of a slowdown of business activities and a cessation of all restaurant in-dining operations on the premises until at least May 31, 2020, sustained losses of business income, and incurred extra expenses.

62.    Such slowdown or cessation was necessary due to, *inter alia*, the Civil Authority Actions that prohibited public access to the premises for reasons beyond Plaintiffs' control.  For at least four consecutive weeks, when the Civil Authority Actions had been in effect, Plaintiffs' customers were prohibited from accessing the premises.  This suspension of operations was caused by fortuitous events and resulted in direct physical loss to the premises, as set forth above.

63.     Based on such facts, a reasonable person and Plaintiffs' objective expectations would establish that, considering the context of the entirety of the Policy that is in the nature of an "all risk" policy that covers a litany of losses attributable to events beyond the control of the insureds, any such losses of money or income or increases in costs constitute "loss" or "damage" as those terms are used in the Policy even without any showing that the property itself experienced any form of alteration (which in Plaintiffs' situations it did, as set forth above). Such damage or loss resulted from a Covered Cause of Loss. As these losses and damage are accidental, fortuitous, direct, physical, and arise out of or are related to a peril insured against, they are insurable losses covered under the Policy.

64.     In compliance with the Civil Authority Actions, Plaintiffs were unable to reopen for in dining service from March 20, 2020 until at least May 31, 2020, and then were only able to reopen at 50% in dining capacity. Between at least May 31, 2020 and the date of this filing, Plaintiffs have only been able to operate on a 50% dine in capacity and will not be able to open at a dine in capacity higher than 50% until Civil Authority Actions are relaxed. Plaintiffs have not, at the time of the filing of this action, returned to normal business operations, and it is unlikely Plaintiffs will be able to fully restore their operations in the near future to the condition that would have existed if no loss occurred and/or no Civil Authority Actions had been taken.

65.     These losses and expenses have continued through the date of filing of this action.

66.     These losses, damage and increased expenses are not excluded from coverage under the Policy. And because the Policy is an all-risk policy, and Plaintiffs have complied with their contractual obligations, Plaintiffs are entitled to payment for these losses and expenses.

67.     Accordingly, on or about March 16, 2020, Plaintiffs provided notice of a claim for their losses and expenses to Defendants, consistent with the terms and procedures of the Policy.

68.    But contrary to the plain language of the Policy, and to Defendants' corresponding promises and contractual obligations, by letter dated July 23, 2020, which included a form denial and without having conducted any substantive investigation of Plaintiffs' business, Defendants refused to pay for Plaintiffs' covered losses and expenses under the terms of the Policy.

69.    This denial appears to be consistent with the position Defendants have taken with other similarly situated businesses nationwide.

## CLASS ACTION ALLEGATIONS

70.    The class claims all derive directly from a single course of conduct by Defendants: their systematic and uniform refusal to pay insureds for covered losses based on, *inter alia*, the actions taken by civil authorities to suspend or curtail business operations, no matter the circumstance.

71.    Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

72.    Plaintiffs seek to represent a class of persons and entities located in Tennessee and such other states as the Court may deem appropriate, defined as follows (collectively, the "Class" or "Classes"):

a)    All persons and entities with Business Income coverage and/or Extended Business Income coverage under a property insurance policy issued or underwritten by Defendants that suffered an interruption of business operations and for which Defendants have either actually denied, stated they will deny a claim for the losses or have otherwise

failed to acknowledge, accept as a covered loss, or pay for the covered losses, whether or not formal claims have been filed ("the Business Income Coverage Class").

b)  All persons and entities with Extra Expense coverage under a property insurance policy issued or underwritten by Defendants that suffered an interruption of business operations and for which Defendants have either actually denied, stated they will deny a claim for the expenses or have otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses whether or not formal claims have been filed ("the Extra Expense Coverage Class").

c)  All persons and entities with Civil Authority coverage under a property insurance policy issued or underwritten by Defendants that suffered an actual loss of Business Income and/or Extra Expense caused by an action of a civil authority that prohibited full access to the premises, and for which Defendants have either actually denied, stated they will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses whether or not formal claims have been filed ("the Civil Authority Coverage Class").

73.  Excluded from each defined proposed Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

74.  Plaintiffs reserve the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

75.  This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity and Ascertainability**

76.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, thousands of members of each proposed Class, and these individuals and entities are spread out across the State and the United States.

77.    The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or their agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Predominance of Common Issues**

78.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Defendants issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a)    Whether Plaintiffs and the Class members suffered a covered "loss" under the policies issued to members of the Class;

b)    Whether Defendants wrongfully denied all claims based on the facts set forth herein;

c)    Whether Defendants' Business Income coverage applies based on the facts set forth herein;

d)        Whether Defendants' Extra Expense coverage applies to a loss caused by the Suspension of business operations based on the facts set forth herein;

e)        Whether Defendants' Civil Authority coverage applies to a loss of Business Income based on the facts set forth herein;

f)        Whether Defendants have breached contracts of insurance through a uniform and blanket denial of all claims for business losses under the circumstances alleged herein;

g)        Whether Plaintiffs and the Class members suffered losses or damages as a result of Defendants' actions; and

h)        Whether Plaintiffs and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

**Typicality**

79.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class members and arise from the same course of conduct by Defendants. Plaintiffs and the other Class members are all similarly affected by Defendants' refusal to pay under their property insurance policies. Plaintiffs' claims are based upon the same legal theories as those of the other Class members. Plaintiffs and the other Class members sustained losses and damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.  The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**Adequacy of Representation**

80.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs have retained counsel with substantial experience in prosecuting complex class action litigation.

81.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to or that irreconcilably conflict with those of the Class members.

**Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests**

82.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiffs seek class-wide adjudication as to the interpretation and scope of Defendants' property insurance policies that use the same language and terms as the Policy. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

**Final Injunctive and/or Corresponding Declaratory Relief with respect to the Class is Appropriate**

83.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the members of the Classes, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The Class members' claims all derive directly from Defendants' systematic and uniform refusal to pay insureds for any losses suffered that they attribute are due to risk of infection of COVID-19 and/or actions taken by civil authorities to suspend or prohibit access to and occupancy of the business.  Defendants' actions or refusal to act are grounded upon the same generally applicable legal theories. Plaintiffs and Class Members are entitled to a declaration regarding their rights and obligations under such agreements, including

whether Defendants are obligated to pay claims under the Policy and similar policies based on the

facts and circumstances alleged above and the "all risk" nature of such insurance policies and

whether the claims at issue constituted a Covered Cause of Loss.

**<u>Superiority</u>**

84.     To the extent applicable to certification of a Class under these circumstances, this

action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to

other available methods for the fair and efficient group-wide adjudication of this controversy. The

common questions of law and of fact regarding Defendants' conduct and the interpretation of the

common language in their property insurance policies predominate over any questions affecting

only individual Class members.

85.     Because the damages suffered by certain individual Class members may be

relatively small, the expense and burden of individual litigation would make it very difficult for

all individual Class members to redress the wrongs done to each of them individually, such that

many Class members would have little to no economic interest in individually controlling the

prosecution of specific actions, and the burden imposed on the judicial system by individual

litigation by even a small fraction of the Classes would be enormous, making class adjudication

the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

86.     The conduct of this action as a class action presents far fewer management

difficulties, far better conserves judicial resources and the parties' resources, and far more

effectively protects the rights of each Class member than would piecemeal litigation. Compared

to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of

individualized litigation, the challenges of managing this action as a class action are substantially

outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of

class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

87.     Particularly as to the interpretation of the scope of the uniform provisions of the Policy set forth above, certification of the Classes may also be appropriate under Fed. R. Civ. P. 23(c)(4), which provides that "when appropriate, an action may be brought or maintained as a class action with respect to particular issues."

88.     Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on their own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any portion of the Classes into subclasses that are each treated as a class.

## CAUSES OF ACTION

## COUNT I: DECLARATORY JUDGMENT

### (On behalf of the Business Income Coverage Class)

89.     Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1-88 above, as though fully set forth herein, but only as applicable to the Business Income Coverage Class.

90.     Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income Coverage Class.

91.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

92.     Plaintiffs' Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy and the policies of other Business Income Coverage Class members.

93.     In the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of an interruption of business operations during the Period of Restoration.

94.     Plaintiffs and Business Income Coverage Class members suffered direct physical loss of or damage to Plaintiffs' insured premises and property and other Class members' insured premises and property, resulting in suspensions of business operations at the premises. These suspensions have caused Plaintiffs and Business Income Class members to suffer losses of business income.

95.     These suspensions, and the resulting losses, triggered business income coverage under the Policy and other Business Income Coverage Class members' policies.

96.     Plaintiffs and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums and/or those provisions has been waived by Defendants, or Defendants are estopped from asserting them.

97.     Defendants, without justification, dispute that the Policy and other Business Income Coverage Class members' policies provide coverage for these losses. Defendants have abrogated their coverage obligations pursuant to the policies' clear and unambiguous terms and have

wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Business Income Coverage Class members are entitled.

98.    Plaintiffs seek a Declaratory Judgment that their Policy and other Business Income Coverage Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

99.    An actual case or controversy exists regarding Plaintiffs' and other Business Income Coverage Class members' rights and Defendants' obligations to reimburse Plaintiffs and other Business Income Coverage Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiffs request that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' losses of business income as set forth above.

## COUNT II:  BREACH OF CONTRACT

### (On behalf of the Business Income Coverage Class)

100.    Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1-88 above, as though fully set forth herein, but only as applicable to the Business Income Coverage Class.

101.    Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income Coverage Class.

102.    Plaintiffs' Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid or received the benefits of premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

103.    In the Policy, Defendants promised to pay for losses of business income incurred as a result of perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of an interruption of business operations during the Period of Restoration.

104.    Plaintiffs and Business Income Coverage Class members have suffered a direct physical loss of or damage to Plaintiffs' insured premises and other Business Income Coverage Class members' insured premises as a result of suspensions of business operations at these premises. These suspensions have caused Business Income Coverage Class members to suffer losses of business income.

105.    These losses triggered business income coverage under both the Policy and other Business Income Coverage Class members' policies.

106.    Plaintiffs and the other Business Income Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

107.    Defendants have denied coverage and refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Business Income Coverage Class members' policies and/or jointly and severally responsible therefor.

108.    As a result of Defendants' breaches of the Policy and other Business Income Coverage Class members' policies, Plaintiffs and other Class members have suffered actual and substantial damages for which Defendants are jointly and severally liable.

WHEREFORE, Plaintiffs, both individually and on behalf of other Class members, seek compensatory damages resulting from Defendants' breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT III: DECLARATORY JUDGMENT

### (On behalf of the Extra Expense Coverage Class)

109.    Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1-88 above, as though fully set forth herein and, but only as applicable to the Extra Expense Coverage Class.

110.    Plaintiffs bring this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

111.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

112.    Plaintiffs' Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Extra Expense Coverage Class members' losses for claims covered by the Policy and the policies of other Extra Expense Coverage Class members.

113.    Specifically, Defendants promised to pay for Extra Expenses incurred by Plaintiffs and other Extra Expense Coverage Class members during the Period of Restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

114.    Plaintiffs and Extra Expense Coverage Class members suffered direct physical loss of or damage to Plaintiffs' restaurant and other Class members' insured premises, resulting in suspensions of business operations at these premises.  As a result, Plaintiffs and other Extra Expense Coverage Class members have incurred Extra Expenses, as defined in the Policy and other Extra Expense Coverage Class members' policies.

115.    These Expenses triggered Extra Expense coverage under the Policy and other Extra Expense Coverage Class members' policies.

116.    Plaintiffs and the other Extra Expense Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

117.    Defendants, without justification, dispute that the Policy and other Extra Expense Coverage Class members' policies provide coverage for these Extra Expenses.

118.    Plaintiffs, both individually and on behalf of the other members of the Extra Expense Coverage Class, seek a Declaratory Judgment that their Policy, and those of other members of the Extra Expense Coverage Class, provides coverage for these Extra Expenses.

119.    An actual case or controversy exists regarding Extra Expense Coverage Class members' rights and Defendants' obligations under Extra Expense Coverage Class members' policies to reimburse Class members for these Extra Expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiffs request that this Court enter a Declaratory Judgment declaring that the Policy and other Extra Expense Coverage Class members' policies provide coverage for Class members' Extra Expenses.

## COUNT IV: BREACH OF CONTRACT

### (On behalf of the Extra Expense Coverage Class)

120.    Plaintiffs incorporate by reference and realleges each and every allegation contained in paragraphs 1-88 above, as though fully set forth herein and but only as applicable to the Extra Expense Coverage Class.

121.    Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Coverage Class.

122.    Plaintiffs' Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendants directly or indirectly were paid premiums in exchange for promises to pay Extra Expense Coverage Class members' losses for claims covered by the Policy.

123.    Specifically, Defendants promised to pay for Extra Expenses incurred by Plaintiffs and other Extra Expense Coverage Class members during the Period of Restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and/or to repair replace property.

124.    Plaintiffs and Extra Expense Coverage Class members suffered direct physical loss of or damage to the Plaintiffs' restaurant and other Extra Expense Coverage Class members' insured premises, resulting in suspensions of business operations at these premises.    These suspensions have caused Extra Expense Coverage Class members to incur Extra Expenses.

125.    These Expenses triggered Extra Expense coverage under the Policy and other Extra Expense Coverage Class members' policies.

126.    Plaintiffs and the other Extra Expense Coverage Class members have complied with all applicable provisions of the Policy, including payment of premiums.

127.    Defendants denied coverage and refused performance under the Policy and other Extra Expense Coverage Class members' policies by denying coverage for these Extra Expenses. Accordingly, Defendants are in breach of the Policy and other Extra Expense Coverage Class members' policies.

128.    As a result of Defendants' breaches of the Policy and other Extra Expense Coverage Class members' policies, Plaintiffs and other Extra Expense Coverage Class members have suffered actual and substantial damages for which Defendants are jointly and severally liable.

WHEREFORE, Plaintiffs, individually and on behalf of other Extra Expense Coverage Class members, seek compensatory damages resulting from Defendants' breaches of the Policy and other Extra Expense Coverage Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT V: DECLARATORY JUDGMENT

### (On behalf of the Civil Authority Coverage Class)

129.    Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1-88 above, as though fully set forth herein, but only as applicable to the Civil Authority Coverage Class.

130.    Plaintiffs bring this Count both individually and on behalf of the other members of the Civil Authority Coverage Class.

131.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

132.    Plaintiffs' Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants directly or indirectly were paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses for claims covered by the policies.

133.    In the Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when, *inter alia*, full access to an insured's premises is specifically prohibited by Civil Authority Actions as the result of a Covered

Cause of Loss and the Civil Authority Actions are taken in response to dangerous physical conditions.

134.    Plaintiffs and other Civil Authority Coverage Class members have suffered loss of or damage to and incurred expenses as a result of actions of civil authorities that prohibited full access to insured premises under the Policy and Civil Authority Coverage Class members' policies.

135.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Civil Authority Coverage Class members' policies.

136.    Plaintiffs and the other Civil Authority Coverage Class members have complied with all applicable provisions of the Policy, including payment of premiums.

137.    Defendants, without justification, dispute that the Policy provides coverage for these losses.

138.    Plaintiffs seek a Declaratory Judgment that their Policy and other Class members' policies provide coverage for the losses that Civil Authority Coverage Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

139.    An actual case or controversy exists regarding Civil Authority Coverage Class members' rights and Defendants' obligations under Civil Authority Coverage Class members' policies to reimburse Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiffs, both individually and on behalf of other Civil Authority Coverage Class members, request that this Court enter a Declaratory Judgment declaring that the Policy provides Civil Authority coverage for the losses and extra expenses incurred by Plaintiffs and the other Class members.

## COUNT VI: BREACH OF CONTRACT

### (On behalf of the Civil Authority Coverage Class)

140.    Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1-88 above, as though fully set forth herein, but only as applicable to the Civil Authority Coverage Class.

141.    Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

142.    Plaintiffs' Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants directly or indirectly were paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses and expenses covered by the Policy.

143.    In the Policy and other Civil Authority Coverage Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when, *inter alia*, access to an insured's premises is specifically prohibited by Civil Authority Actions as the result of a Covered Cause of Loss, the civil authority prohibits full access to the premises and property next to or close to the insured premises, and the civil authority action is taken in response to dangerous physical conditions.  The Civil Authority Actions satisfy all the requirements of this coverage.

144.    Plaintiffs and other Class members have suffered losses of or damages to and incurred expenses as a result of actions of civil authorities that prohibited full public access to insured premises under the Policy and Civil Authority Coverage Class members' policies.

145.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Civil Authority Coverage Class members' policies.

146.    Plaintiffs and the other Civil Authority Coverage Class members have complied with all applicable provisions of the Policy, including payment of premiums.

147.    Defendants refused performance under the Policy and other Civil Authority Coverage Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Civil Authority Coverage Class members' policies.

148.    As a result of Defendants' breaches of the Policy and other Civil Authority Coverage Class members' policies, Plaintiffs and other Civil Authority Coverage Class members have suffered actual and substantial damages for which Defendants are jointly and severally liable.

WHEREFORE, Plaintiffs, individually and on behalf of other Civil Authority Coverage Class members, seek compensatory damages resulting from Defendants' breaches of the Policy and other Civil Authority Coverage Class members' policies and all other relief deemed appropriate by this Court.

## COUNT VII: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### (On behalf of All Classes)

149.    Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1-88 above, as though fully set forth herein and as applicable to all Classes.

150.    The agreements described in this Complaint constitute enforceable contracts under applicable state law.

151.    There is implied in every contract a duty of good faith and fair dealing in its performance and enforcement.

152.    The specific requirements of this duty depend upon the contract, with courts imposing a construction that is fair and reasonable under the circumstances.

153.    At a minimum, this duty requires Defendants to perform under the insurance contracts with Plaintiffs and Class Members in a manner consistent with state and federal law and to protect the interests of Plaintiffs and Class Members in having the promises required by the agreements and applicable law performed and by ensuring companies do not engage in unfair dealing.

154.    Defendants, either separately or by acting in concert with third parties, breached this duty of good faith and fair dealing owed to Plaintiffs and Class Members, and in undertaking such actions frustrated or denied them the benefits of their original bargain.

155.    Defendants also breached this duty of good faith and fair dealing owed to Plaintiffs and Class Members by failing to properly investigate their claims and by other acts or omissions of which Plaintiffs is presently unaware and that will be shown according to proof at trial.

156.    As a proximate result of the conscious and objectively unreasonable conduct of Defendants as set forth above, which conduct was either intended, designed to or did frustrate the rights of Plaintiffs and Class Members arising out of such agreements and their reasonably justified expectations based upon the requirements of the law, Plaintiffs and Class Members have suffered and/or will continue to suffer in the future damages plus interest, and other economic and consequential damages, in an amount to be proven at trial.  As a further proximate result of the conduct of Defendants, Plaintiffs was compelled to retain legal counsel and to institute litigation to obtain the benefits of these agreements and covenants for the benefit of themselves and all other Class Members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally, as follows:

A.     Entering an order certifying the proposed Classes, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

B.     Entering declaratory judgments on Counts I, III, and V in favor of Plaintiffs and the members of the Business Income Coverage Class, the Extra Expense Coverage Class and the Civil Authority Coverage Class as follows:

     i.     That all Business Income, Extra Expense and Civil Authority losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiffs' and Class members' policies; and

     ii.     Defendants, jointly and severally, are obligated to pay for the full amount of the Business Income, Extra Expense and Civil Authority losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above as insured and covered losses and expenses under Plaintiffs and Class members' policies;

C.     Entering judgments on counts II, IV, VI and VII in favor of Plaintiffs and the members of the Business Income Coverage Class, the Extra Expense Coverage Class and the Civil Authority Coverage Class, and awarding damages in amounts to be determined at trial, as applicable;

D.     An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.     An award of costs and attorneys' fees; and

F.     Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated: August 20, 2020

/s/ J. Luke Sanderson
J. Luke Sanderson (TN Bar # 35712)
44 N. Second Street, Suite 500
Memphis, TN  38103
Tel:  (901) 523-1844
Fax: (901) 523-1857
Email:  Luke@wcwslaw.com

**WHATLEY KALLAS, LLP**

*Joe R. Whatley, Jr.*[*]
W. Tucker Brown[*]
2001 Park Place North
Suite 1000
Birmingham, AL  35203
Phone:  (205) 488-1200
Fax:  (800) 922-4851
Email:  jwhatley@whatleykallas.com
            tbrown@whatleykallas.com

**WIGGINS CHILDS PANTAZIS FISHER
& GOLDFARB**

Dennis G. Pantazis[*]
D.G. Pantazis, Jr.[*]
The Kress Building
301 19th Street North
Birmingham, AL  35203
Phone:  (205) 314-0500
Fax:  (205) 254-1500
Email:  dgp@wigginschilds.com
            dgpjr@wigginschilds.com

[*] Motion for Admission *Pro Hac Vice* to be promptly filed.